**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| LESLIE R. MEFFORD, | : | Case No. 3:18-cv-282 |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

I. **Introduction**

Plaintiff Leslie R. Mefford brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income. She applied for benefits on October 21, 2014, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Michael F. Schmitz concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #12), the Commissioner's Memorandum in Opposition (Doc. #17), and the administrative record (Doc. #s 9, 16).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Schmitz's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since December 10, 2008. She was thirty-nine years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). She has a high school education. *See id.* § 416.964(b)(4).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #9, *PageID* #s 880-94), Plaintiff's Statement of Errors (Doc. #12), and the Commissioner's Memorandum in Opposition (Doc. #17). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

IV. **The ALJ's Decision**

As noted previously, it fell to ALJ Schmitz to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since October 21, 2014.

Step 2: She has the severe impairments of obesity, degenerative disc disease of the cervical and lumbar spine, sacroiliac dysfunction/sacroiliitis, left ankle and foot posttraumatic osteoarthritis, deep vein thrombosis (DVT) of the left lower extremity, osteoarthritis of the right knee, generalized osteoarthritis, fibromyalgia, chronic obstructive pulmonary disease (COPD) and asthma, cellulitis, abscess and infection of wound, bipolar disorder, depressive/dysthymic disorder, posttraumatic stress disorder (PTSD), panic disorder, anxiety disorder, opioid use disorder, heroin use disorder and cocaine use disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except she can stand/walk up to 6 hours in an 8-hour workday, but no longer than 2 hours at a time. She could sit up to six hours in an 8-hour workday, but no longer than 2 hours at a time. She could occasionally push, pull and operate foot controls with her bilateral lower extremities. She could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She could occasionally balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to extreme cold, extreme heat, humidity, dusts, fumes, gases, odors, poor ventilation and other pulmonary irritants, and should avoid all exposure to

4

>
> hazards such as unprotected heights, moving mechanical parts and operation of motor vehicles. She can perform simple, routine and repetitive tasks but not at a production rate pace such as assembly line work. She can interact occasionally with supervisors and coworkers, with only incidental interaction with the general public and should be limited to superficial contact meaning no sales, arbitration, negotiation, conflict resolution, group tasks, or management or direction of others. She can respond appropriately to occasional changes in a routine work setting as long as any such changes are easily explained and/or demonstrated in advance of gradual implementation."

Step 4: She is unable to perform any of her past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #9, *PageID* #s 880-94). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 894.

## V. Discussion

Plaintiff contends that the ALJ erred in assigning "little weight" to examining physician, Dr. Smith's opinions. Additionally, "The ALJ's residual functional capacity runs contrary to the only two sources of record [(Dr. Smith and Ms. Allen)] that actually had the opportunity to personally examine and evaluate Ms. Mefford." (Doc. #12, *PageID* #2352).

The Regulations require an ALJ to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 416.927(b), (c). Unless the ALJ assigns controlling weight to a treating source's opinion, the ALJ must consider all of the following factors in deciding the weight to give any medical opinion: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. *Id.* at (c).

5

Dr. Smith evaluated Plaintiff on May 20, 2014. Plaintiff reported that she fractured her lower leg in 2003 and fractured her left heel in 2008. (Doc. #9, *PageID* #1222). Her family doctor told her that she has arthritis and deterioration in her leg and heel. *Id.* Her heel is painful—between seven and eight on a scale from one to ten. *Id.* Plaintiff also has low back pain—a six on a scale from one to ten—secondary to her fractured leg. *Id.* She has asthma and thinks she has COPD. *Id.* She has had hepatitis C for sixteen years. *Id.* Further, she has been diagnosed with bipolar disorder. *Id.*

Dr. Smith diagnosed Plaintiff with residual of fracture of left heel with mildly impaired range of motion of the foot and great toe; hepatitis C; chronic low back pain secondary to being pushed out a window; severe obesity; and mood disorder. *Id.* at 1224. He reported,

> Based on objective findings on physical exam, the following specific work-related restrictions seem present:
> 1. The claimant is incapable of any lifting, carrying, pushing, or pulling.
> 2. Sitting, standing, and walking need to be limited to 10 minutes in view of her restriction in range of motion in her left lower extremity.
> 3. Hearing and speaking are unaffected.
> 4. Traveling is a problem because she does not have a driver's license so she would need public transportation to and from work
> 5. Mental status is borderline bipolar but she would be capable of managing benefits if awarded.

*Id.*

The ALJ discounted Dr. Smith's opinions because, although Dr. Smith indicated he based his opinions on objective findings, "the limitations were parallel to the claimant's stated limitations and internally inconsistent with his examination." *Id.* at 886.

6

Specifically, the ALJ assigned "limited weight" to Dr. Smith's opinion that Plaintiff could not lift, carry, push, or pull. *Id.* at 892. He explained, "there were no musculoskeletal or neurological abnormalities on examination of her upper extremities. Grasp, manipulation, pinch and fine coordination were normal, as well as range of motion to her cervical spine, shoulder, hands, wrists and elbows." *Id.* at 886.

The ALJ is correct that Dr. Smith did not note any abnormalities of Plaintiff's upper extremities. However, lifting, carrying, pushing, and pulling require more than just a person's upper extremities. For example, a back problem could limit a person's ability to lift, carry, push, or pull. In the present case, Dr. Smith indicated that Plaintiff's range of motion in her dorsolumbar spine was limited. *Id.* at 1227. Moreover, she has chronic back pain as the result of being pushed out a window. *Id.* at 1224. The medical evidence, as explained in more detail below, supports Dr. Smith's findings concerning Plaintiff's back problems. There is no indication that the ALJ considered Plaintiff's other impairments when he rejected Dr. Smith's opinion regarding Plaintiff's ability to lift, carry, push, or pull.

Indeed, it is not clear what evidence supports the ALJ's conclusion that Plaintiff could perform a reduced range "light work" and could occasionally push or pull. Similarly to Dr. Smith, Katherine Allen, Plaintiff's treating certified nurse practitioner, opined Plaintiff could only lift and/or carry up to ten pounds frequently and her ability to push or pull is markedly limited. However, the ALJ rejected Ms. Allen's opinions because "the limitations she assessed is [sic] inconsistent with the evidence." *Id.* at 892. Further, the record-reviewing physicians opined that Plaintiff could perform a reduced

7

range of "medium work," but the ALJ rejected their opinion based on evidence received after their review.

"While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, No. 1:10-CV-398, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), *report and recommendation adopted*, 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011) (citing *Hall v. Celebrezze,* 314 F.2d 686, 690 (6th Cir.1963); *Clifford v. Apfel,* 227 F.2d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record."); *Rosa v. Callahan,* 168 F.3d 72, 78-79 (2nd Cir. 1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion.")). In the present case, the ALJ improperly substituted his own opinion, without support in the record, for Dr. Smith's opinion regarding Plaintiff's ability to lift, carry, push, or pull.

The ALJ assigned "limited weight" to Dr. Smith's opinion that Plaintiff was limited to standing, sitting, or walking for ten minutes at a time based on her restricted range of motion in her left lower extremity. (Doc. #9, *PageID* #892). The ALJ emphasized that "this was the time limit asserted by the claimant." *Id.* at 886. Thus, the ALJ concluded, "[Dr. Smith] relied on the claimant's statements rather than his examination in forming his opinion." *Id.* at 892. Notably, the similarity between Plaintiff's reported limitations and Dr. Smith's opinions does not necessarily mean that Dr. Smith relied on Plaintiff's statements rather than his own examination.

8

Dr. Smith's examination revealed that Plaintiff had several issues with her left leg, foot, and ankle. For instance, he noted that although she could walk normally, "Rapid alternating movements are decreased with the left foot, normal with right. She can raise up on the right foot but not as much on the left." *Id.* at 1223. Dr. Smith indicated she has limited range of motion in her left ankle, foot, and big toe. *Id.* Further, he noted that Plaintiff has a history of trauma to her left lower leg and heel that have led to chronic pain in her leg. *Id.* at 1224.

Although the ALJ emphasizes that Dr. Smith's opinions are "internally inconsistent" with his examination, he overlooks or ignores that Dr. Smith's opinions are consistent with the vast medical evidence of record that shows Plaintiff had consistent issues with her left leg, among other issues. For example, Plaintiff was treated by providers at Rocking Horse Community Center who consistently noted problems with her legs, ankle, and foot. In May 2014, Jennifer Uhlir, FNP, noted that Plaintiff had increasing edema in her lower legs. *Id.* at 1591. "[T]hey get so swollen that they are cause painful and pitting." *Id.* More than two years later, in August 2016, Plaintiff reported having severe pain in her left ankle and foot that radiated to her calf. *Id.* at 1571. Climbing stairs, moving, walking, and standing aggravated her pain. *Id.* Upon examination, Ms. Uhlir noted that Plaintiff was limping and had limited range of motion in her left ankle due to severe pain. *Id.* at 1576. About a month later, in September 2016, Plaintiff had moderate-severe pain and swelling in her left ankle that was constantly worsening. *Id.* at 1563. In addition, she reported that a blood clot was recently found in her lower left leg. *Id.* Tynese Anderson, MD, noted in September 2016, that Plaintiff's

9

left ankle had significant swelling, likely related to her blood clot. *Id.* at 1567. He also noted TTP with minimal touch, erythema of her ankle, and minimal ability to wiggle her toes. *Id.* at 1567.

At Equitas Health Medical Center, Plaintiff saw Shiron Jones, CNP, and Katherine Allen, CNP, for treatment of several conditions, including, for instance, HIV, hepatitis C, asthma, chronic pain, and seasonal allergies. In February 2017, Ms. Allen noted that Plaintiff had surgery on her left ankle to remove hardware and her surgeon removed her sutures earlier that day. *Id.* at 1546. She was wearing an orthopedic shoe and using crutches. *Id.* Ms. Allen prescribed mupirocin to help control MRSA colonization. *Id.* She indicated that Plaintiff was HIV positive and started her on Triumeq and Bactrim. Ms. Allen informed Plaintiff that they would address her hepatitis C after her HIV was better managed. In addition, insurance would not cover hepatitis C drugs until Plaintiff had clean drug tests for six months. *Id.* Plaintiff reported that her husband had recently overdosed on heroin, and she had stopped using heroin and crack since the end of January. *Id.* Ms. Allen advised Plaintiff of the need for substance abuse treatment to avoid relapse and provided her with information about several mental health and addiction services in the area. *Id.* Ms. Allen prescribed an inhaler for Plaintiff's asthma. *Id.* About a month later, in March 2017, Ms. Allen noted that Plaintiff's left ankle was mildly swollen but she was ambulating without crutches. *Id.* at 1539. Plaintiff was referred to pain management. *Id.* Plaintiff reported that she did not have side effects from the HIV treatment.

In April 2017, Ms. Allen noted that Plaintiff had a mild limp from her left ankle. *Id.* at 1537. Her ankle still had mild swelling. *Id.* at 1532. Plaintiff reported neck and joint stiffness, fatigue, and lumbar pain. *Id.* at 1537. Plaintiff had high blood pressure for which Ms. Allen prescribed Norvasc. *Id.* at 1532. Further, Ms. Allen noted that Plaintiff has a history of bipolar disorder, is coping with grief and substance dependence, and although she denies suicidal ideation, has had self-harm thoughts in the past. *Id.* She prescribed Trazodone. *Id.* In June 2017, Shiron Jones, CNP, indicated that Plaintiff's left ankle had mild swelling. *Id.* at 1230. She also had neck and joint stiffness, lumbar pain, and gait problems. *Id.* at 1529. Ms. Jones indicated that Plaintiff has chronic pain—"Multi sites for multi conditions including [fibromyalgia]." *Id.* at 1525. Two months later, in August 2017, Ms. Allen noted that Plaintiff's left ankle still had mild swelling and pain with ambulation. *Id.* at 1523. Plaintiff reported that she had no side effects from HIV treatment and wanted to start treatment for hepatitis C. *Id.* at 1518. Ms. Allen noted that Plaintiff's drug screen was clean. *Id.* at 1519. In October 2017, Katherine Allen, CNP, noted that Plaintiff had bilateral knee pain, lumbar pain, joint stiffness, and gait problems. *Id.* at 1515. Further, her left ankle had mild swelling and pain with ambulation. *Id.* Plaintiff's knee pain is "very severe after walking moderate distances." *Id.* Plaintiff reported that she was receiving back injections and Vicodin from C. Cerreli, a pain-management specialist. *Id.* at 1511. Plaintiff said her roommate keeps the medication and gives it to her on a schedule. *Id.*

For pain management, Plaintiff was referred to John Beresh, MD, at Beresh Pain Management. In March and April 2017, Dr. Beresh noted that, upon examination,

11

Plaintiff had decreased extension in her lumbar spine, tenderness over her spinous process from L2-L3; pain with palpation to her lumbar facet and right hip bursa; decreased range of motion in her right knee and left ankle; instability of her right knee, and an irregular gait. *Id.* at 1485, 1488-89. She also had edema on her left lower extremity. *Id.* In May 2017, Tamika Auld, CNP, noted that Plaintiff had tenderness over her spinous process from L2-L3; pain with palpation to her lumbar facet and right hip bursa; decreased range of motion in her right knee and left ankle; and an irregular gait. *Id.* at 1480.

When Plaintiff moved and could not easily make it to appointments with Dr. Beresh, she was referred to Connie Cerilli, NP, at Pain and Spine Center. Plaintiff was treated for pain in her neck, low back, shoulders, feet, knees, and legs. For example, in July 2017, Ms. Cerilli at Pain and Spine Center, noted upon examination that Plaintiff had a painful response to deep palpation of her paracervical spinal region and lumbosacral region. *Id.* at 2302. Plaintiff's sacroiliac region was tender to palpation. *Id.* Her trapezius, supraspinatus, and infraspinatus had restricted range of motion bilaterally. *Id.* She had limited range of motion in her motor hip flexors and knee extensors. *Id.* Ms. Cerilli opined, "Physical examination and history is consistent with bilateral sacroiliac dysfunction and lumbar and cervical facet loading bilaterally." *Id.* at 2302. In August 2017, Plaintiff reported pain in her lower back and knees—particularly her right knee. *Id.* at 2305. An x-ray of Plaintiff's right knee from 2017 revealed tricompartmental osteoarthritic changes that had progressed since 2012. *Id.* at 2330. Ms. Cerilli indicated that Plaintiff had limited range of motion in her L-spine and painful response to palpation

in her lumbosacral region. *Id.* at 2305. Plaintiff had an antalgic gait with shuffling. *Id.*
In September 2017, Martha Monica Corradine, MD, administered bilateral sacroiliac joint injections. *Id.* at 2308. In January 2018, Ms. Cerilli noted that Plaintiff had right knee tenderness and swelling with range of motion mildly restricted due to pain. *Id.* at 2319. Additionally, she noted mild crepitus and bursa tenderness with palpation. *Id.* Shortly thereafter, Abdul Shahid, MD, administered an intra articular injection in Plaintiff's right knee. *Id.* at 2322.

Although the ALJ pointed out inconsistencies between Dr. Smith's opinion and his examination, he did not acknowledge that the medical record is consistent with and supports Dr. Smith's opinions. Plaintiff's extensive treatment demonstrates the severity of her conditions and is consistent with Dr. Smith's opinions. Not only does the record show Plaintiff's ongoing problems with her left leg and right knee, it is also reveals significant back problems—that support Dr. Smith's opinions regarding Plaintiff's limited ability to lift, carry, push or pull.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[2]

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*,

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

13

378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to

14

determine anew whether Plaintiff was under a disability and whether her application for Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Leslie R. Mefford was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

February 6, 2020	*s/Sharon L. Ovington*
	Sharon L. Ovington
	United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).